Maria DURAN, Plaintiff,

v.

JAMAICA HOSPITAL and Joseph
DeToma, Defendants.

No. 01–CV–6664 (NGG).

United States District Court,
E.D. New York.

Aug. 2, 2002.

Michael P. Mays, Mays & Associates, Jamaica, NY, for Plaintiff.

*MEMORANDUM & ORDER*

GARAUFIS, District Judge.

Plaintiff Maria Duran commenced the above titled action on October 9, 2001, pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000, *et seq*, and 42 U.S.C. § 1981. Plaintiff also asserts state law claims of negligence, slander, and wrongful termination. Defendants Jamaica Hospital and Joseph DeToma (together "Defendants") move pursuant to FED R. CIV. P. 12(b)(6) to dismiss Plaintiff's negligence claim against Jamaica Hospital, Plaintiff's slander claim against Jamaica Hospital and DeToma, and Plaintiff's wrongful termination claim against Jamaica Hospital for failure to state a claim upon which relief can be granted. The wrongful termination claim was converted to a motion for summary judgment pursuant to FED R. CIV. P. 56, in accordance with this court's consideration of additional exhibits relevant to the claim. For the reasons set forth below, Defendants' motion with respect to all three claims is GRANTED in its entirety.

## I. Background

The following factual allegations are accepted as true for purposes of this motion to dismiss. *See Jaghory v. New York State Dep't of Educ.*, 131 F.3d 326, 329 (2d Cir.1997).

Plaintiff Duran is an Hispanic woman from the Dominican Republic who was employed by Jamaica Hospital in the position of Supportive Care Associate. Duran began her employment with Jamaica Hospital on or about February 1999. DeToma was at all relevant times also an employee of Jamaica Hospital. From about May 1999, until October 1999, DeToma made derogatory and harassing comments to Plaintiff regarding her proficiency with the English language. DeToma further harassed Plaintiff by assigning her duties not within her job description as Supportive Care Associate. On or about October 5, 1999, DeToma falsely reported that Plaintiff unlawfully had her hand inside another employee's pocket book, resulting in the termination of Plaintiff's employment on or about October 7, 1999. Prior to Plaintiff's termination, no investigation or hearing had been conducted by Jamaica Hospital. Plaintiff subsequently filed a timely claim with the New York State Division of Human Rights and received a Right-to-sue letter from the Equal Employment Opportunity Commission, dated July 17, 2001.

On October 9, 2001, Duran commenced the instant proceeding against Defendants Jamaica Hospital and DeToma. Defendants now seek to dismiss Plaintiff's claims for negligence, slander, and wrongful termination for failure to state a claim upon which relief can be granted pursuant to FED R. CIV. P. 12(b)(6).

## II. The Legal Standard

In reviewing a motion brought pursuant to FED R. CIV. P. 12(b)(6), the court must accept all factual allegations in the complaint as true and draw all reasonable inferences from those allegations in the light most favorable to the Plaintiff. *See Albright v. Oliver*, 510 U.S. 266, 268, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994); *Burnette v. Carothers*, 192 F.3d 52, 56 (2d Cir.1999). The complaint may be dismissed only if "it appears beyond doubt, even when the complaint is liberally construed, that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Hoover v. Ronwin*, 466 U.S. 558, 587, 104 S.Ct. 1989, 80 L.Ed.2d 590 (1984) (citing *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). In deciding such a motion, the "issue is not whether a plaintiff will ultimately prevail, but whether the claimant is entitled to offer evidence to support the claims." *Bernheim v. Litt*, 79 F.3d 318, 321 (2d Cir.1996) (internal quotations omitted).

## III. The Moving Defendants' Arguments

### A. The Negligence Claim

■ Plaintiff claims that Jamaica Hospital was negligent in the hiring and retention of DeToma. (Complaint ¶ 31.) Defendants argue that Plaintiff's negligence claim should be dismissed on the grounds that it is barred by New York Workers' Compensation Law ("NYWCL"), which provides an exclusive remedy for negligence actions by an employee against his/her employer.

The exclusivity provision of NYWCL provides that an employer's negligence liability under the NYWCL "shall be exclusive and in place of any other liability." *See* N.Y. Work. Comp. § 11 (McKinney 2002). Sister courts have consistently interpreted this provision to bar negligence claims brought in federal court by an employee against an employer. *See Walker v. Weight,* 961 F.Supp. 32, 35 (E.D.N.Y. 1997) (holding that negligent hiring and retention claims brought by an employee are barred by NYWCL); *Chrzanowski v. Lichtman,* 884 F.Supp. 751, 756 (W.D.N.Y. 1995) (concluding negligence claims are clearly barred by the exclusivity provision of the NYWCL). Plaintiff has not brought her negligence claim pursuant to the NYWCL. Therefore, Plaintiff's negligence claim is barred and must be dismissed.

### B. The Slander Claim

Plaintiff's brings a claim of slander against DeToma and Jamaica Hospital, alleging that on or about October 5, 1999, DeToma falsely reported that Plaintiff unlawfully had her hand inside another employee's pocket book. (Complaint ¶ 9.) Plaintiff further alleges that the false report damaged her reputation and caused her termination. (Complaint ¶ 41.) Defendants argue that Plaintiff's complaint was filed more than two years after DeToma told the alleged lies and is thus time-barred by the one-year statute of limitations for slander actions.[1] In response, Plaintiff argues that the claims brought before the New York State Division of Human Rights ("NYSDHR") and the Equal Employment Opportunity Commission ("EEOC") tolled the statue of limitations for the slander claim now before this court.

■ Federal courts apply state statutes of limitations to intentional tort claims such as slander.[2] Under New York law the statute is one year. N.Y. C.P.L.R. § 215(3) (McKinney 2002); *see also Gold v. Berkin,* No. 00 Civ. 7940, 2001 WL 121940, at *3 (S.D.N.Y. Feb.13, 2001). The one

---

1. In addition, Defendants raise for the first time in their reply brief that Plaintiff's slander claim fails as a matter of law as it is preempted by § 301 of the Labor Management Relations Act, 1947 and barred by the six-month statute of limitations thereunder. *See infra* p. 69. Even if Defendants raised this defense in a timely manner, the adjudication of slander in no way involves interpretation of terms or legal consequences included in the parties' collective bargaining agreement and thus is not controlled by § 301. *See Lugo v. Milford Management Corp.,* 956 F.Supp. 1120, 1126 (1997) (holding that only state claims arising out of allegations of breach of contract or liability in tort are preempted if they are inextricable intertwined with the CBA and require interpretation the terms of the agreement).

2. Absent explicit federal provision or conflicting federal policy underlying the cause of action, federal courts apply the relevant state statute of limitations to pendent state claims. *See Johnson v. Railway Express Agency,* 421 U.S. 454, 465, 95 S.Ct. 1716, 44 L.Ed.2d 295 (1975) (holding that where there is no specifically stated or otherwise relevant federal statute of limitations, the controlling period will be the most appropriate one provided by state law).

year period accrues from the date that the defamatory statement is published or uttered. *See Gold,* 2001 WL 121940, at *3. Duran brought this action on October 9, 2001, more than one year after October 5, 1999, the date that Duran alleges that DeToma made the false accusations. (Complaint ¶ 9.) Plaintiff's defamation claim is therefore time-barred unless the one-year statute of limitations period was tolled while her NYSHRL and/or EEOC claims were pending.

Courts in the Second Circuit are split on whether the statute of limitations with respect to a state law claim is tolled when a state claim arises from the same set of facts as a Title VII claim timely filed with the NYSHRL or the EEOC. *See Callahan v. The Image Bank,* 184 F.Supp.2d 362, 363 (S.D.N.Y.2002) (recognizing that district courts in the Second Circuit disagree as to whether the statute of limitations for state common law causes of action toll during the pendency of an EEOC claim); *compare Forbes v. Merrill Lynch, Fenner & Smith, Inc.,* 957 F.Supp. 450, 455–56 (S.D.N.Y.1997) (tolling tort claims statute of limitation while Title VII claim is pending before the EEOC); *Gray v. Shearson Lehman Bros.,* 947 F.Supp. 132, 136 (S.D.N.Y.1996) (same); *Brown v. Bronx Cross County Medical Group,* 834 F.Supp. 105, 111 (S.D.N.Y.1993) (same); *with Lamb v. Citibank, N.A.,* No. 93 Civ. 2358, 1994 WL 497275, at *8 (S.D.N.Y. Sept.12, 1994) (refusing to toll the one-year statute of limitations for pendency of EEOC and NYSHRL proceedings); *Taylor v. Levine,* No. 83 Civ. 4297, 1985 WL 3406, at *2 (E.D.N.Y. Jan 11, 1985) (refusing to toll one-year statute of limitations for pendent state claim for defamation despite timely filing with the EEOC); *Gardner v. St.*

*Bonaventure Univ.,* 171 F.Supp.2d. 118, 131 (W.D.N.Y.2001) (refusing to toll the statute of limitations for state law claims during pendency of EEOC proceeding); *Stordeur v. Computer Associates Int'l, Inc.,* 995 F.Supp. 94, 99 (E.D.N.Y.1998) (same).

Courts in favor of tolling the statute of limitations as to state claims arising out of the factual allegations before the NYSDHR or EEOC "have done so for two reasons: (1) to avoid duplicative litigation and judicial inefficiency, and (2) to further one of the central purposes of Title VII by allowing [administrative organizations] the opportunity to investigate allegations of employment discrimination in order to facilitate dispute resolution before litigation commences." *Stordeur,* 995 F.Supp. at 99; *see e.g., Brown,* 834 F.Supp. at 111 (reasoning that causing plaintiffs to pursue state claims in separate action results in judicial inefficiency and undermines Title VII facilitation of the resolution of disputes prior to litigation). Courts have further reasoned that because supplemental jurisdiction entitles a plaintiff to adjudicate related state claims in federal court, plaintiffs should be entitled to wait at least until they have received or been denied the necessary "Right-to-sue" letter before they bring an action. *See Brown* 834 F.Supp. at 111 (holding that because the court lacked jurisdiction to hear plaintiff's state law claim until plaintiff was able to bring that claim pendent to a federal claim, the state statute of limitations was tolled while the federal claim was pending with the EEOC).

The weight of authority, however, has held that state common law claims are not tolled during the pendency of an NYSDHR or EEOC claim.[3] *See Callahan,*

---

3. Courts in other circuits that have addressed the issue have held that a state statute of limitations is not tolled by the pendency of an individual's administrative complaint filed

with the EEOC. *See e.g., Juarez v. Ameritech Mobile Communications, Inc.,* 957 F.2d 317, 322–23 (7th Cir.1992) (filing of EEOC charge

184 F.Supp.2d at 363 (stating that "weight of authority ... is against tolling state claims during the pendency of [an] EEOC claim" (citing *Walker,* 961 F.Supp. at 36–37)); *see e.g., Gardner,* 171 F.Supp.2d. at 131 (refusing to toll the statute of limitations for state law claims during pendency of EEOC complaints); *Stordeur,* 995 F.Supp. at 99 (same); *Lamb,* 1994 WL 497275, at *8 (refusing to toll the one-year statute of limitations while plaintiff's claims were before the EEOC and NYSHRL); *Taylor,* 1985 WL 3406, at *2 (refusing to toll one-year statute of limitations for pendent state claim for defamation despite timely filing with the EEOC); *Abdallah v. City of New York,* No. 95 Civ. 9297, 2001 WL 262709 (S.D.N.Y. Mar 16, 2001) (same).

The rationale for refusing to toll the statute of limitations for a pendent state common law claim, such as Duran's defamation claim, is that a timely state law complaint could have been filed at the same time as the Title VII claim without the prerequisite that it go before an administrative body. *See Gardner,* 171 F.Supp.2d. at 131 (reasoning that since a Title VII claimant need not await the outcome of an administrative process before commencing legal action, the state statute of limitations was not tolled); *Stordeur,* 995 F.Supp. at 101 (holding that neither the filing of a Title VII claim, nor the receipt of an EEOC "Right-to-sue" letter is a condition precedent to filing a state intentional tort cause of action).

Second Circuit District Courts that have refused to toll the statute of limitations

have relied on the analogous reasoning of the Supreme Court decision in *Johnson v. Railway Express Agency,* 421 U.S. 454, 465, 95 S.Ct. 1716, 44 L.Ed.2d 295 (1975). In *Johnson,* the plaintiff brought an action against his employer and union for alleged employment discrimination pursuant to Civil Rights Act of 1866, 42 U.S.C. § 1981. The plaintiff in *Johnson* also timely filed a employment discrimination charge with the EEOC pursuant to Title VII of the Civil Rights Act 1964. The court held that despite the timely EEOC filing, since the 1981 remedy was fundamentally separate and independent from the procedures of Title VII, it did not toll the statute of limitations. 421 U.S. at 466, 95 S.Ct. 1716.

Just as in *Johnson,* and as other courts holding against tolling have found, the remedies Plaintiff seeks pursuant to her state and Title VII claims are distinctive. "In intentional tort claims, the plaintiff seeks to be free from injury caused by another person, whereas in the discrimination claims, plaintiff is pursuing freedom from discrimination in the workplace." *Stordeur,* 995 F.Supp. at 100.

 Despite the laudable interest in judicial economy expressed by courts that have tolled the state statute of limitations, this court must respect the "general principle that statute of limitations schemes are exclusively the prerogative of the legislature and, absent a clear legislative declaration that any tolling is permissible, the courts should be reluctant to imply one." *Gardner,* 171 F.Supp.2d. at 131 (citations omitted). Thus, because I decline to toll the state statute of limitation mandated by N.Y. C.P.L.R. § 215(3), Plaintiff's slander claim is hereby dismissed as time-barred.[4]

---

did not toll the statute of limitation on employee's state law invasion of privacy claim); *Arnold v. United States,* 816 F.2d 1306, 1312–13 (9th Cir.1987) (holding state law tort claims are not tolled during pendency of Title VII action); *Dupree v. Hutchins Bros.,* 521 F.2d 236, 238 (5th Cir.1975) (finding state

statute of limitation for § 1981 action was not tolled during pendency of EEOC claim).

4. Although "the allegations that form the basis for the intentional tort claims and the Title VII claim derive from a common nucleus of fact, and therefore satisfy the threshold requirements of supplemental jurisdiction, this

## C. The Wrongful Termination Claim

Plaintiff also brings a common law wrongful termination claim against Jamaica Hospital, alleging that her termination was without just cause, and that Jamaica Hospital violated the terms of their collective bargaining agreement ("CBA") by failing to conduct a hearing and/or investigation prior to terminating her employment. (Complaint ¶¶ 45, 46.)

■ Because this court has considered the CBA, submitted by Defendants, and because Plaintiff has had a reasonable opportunity to respond or submit any further pertinent evidence, Defendant's motion with respect to Plaintiff's wrongful termination claim will be disposed of as a motion for summary judgment pursuant to Fed R. Civ. P. 56. *See* Fed R. Civ. P. 12(b)(6). Because I find there is no genuine issue as to any material fact, Defendant's motion against Plaintiff's common law wrongful termination claim is granted. *See* Fed R. Civ. P. 56(c).

■ Jamaica Hospital contends that Plaintiff's claim is not properly brought pursuant to the common law right of action for wrongful termination. Instead, Jamaica Hospital argues, because Plaintiff's cause of action calls for interpretation of the CBA, the common law right of action is preempted by the federal statutory right of action provided at § 301 of the Labor Management Relations Act, 1947. Defendant further argues that Plaintiff failed to satisfy the criteria required to bring a claim pursuant to § 301.

■ "Section 301 . . . confers jurisdiction upon federal district courts over suits upon collective bargaining contracts." *Auto Workers v. Hoosier Cardinal Corp.,* 383 U.S. 696, 697, 86 S.Ct. 1107, 16 L.Ed.2d 192 (1966) (establishing federal jurisdiction over contracts between an employee and a labor organization representing employees). Furthermore, "state law suits arising out of allegations of breach of contract or of liability in tort are preempted [by § 301] if they are inextricabl[y] intertwined with the CBA and require the court to interpret the terms or legal consequences of a breach of the agreement." *Lugo v. Milford Management Corp.,* 956 F.Supp. 1120, 1126 (1997). Preemption is mandated by the need for uniform federal labor law to prevail over inconsistent local rules. *See Local 174 v. Lucas Flour Co.,* 369 U.S. 95, 103, 82 S.Ct. 571, 7 L.Ed.2d 593 (1962) (holding that incompatible doctrines of local law must give way to principles of federal labor law). "The possibility that individual contract terms might have different meanings under state and federal law would inevitably exert a disruptive influence upon both the negotiation and administration of collective agreements." *Id.*

In the case before the court, the CBA governs just cause at Section V, entitled "Discharge for Cause," and hearings and investigations at Section VI, entitled "Grievance Procedure." (Certification of Counsel in Supp. of Defs.' Mot. For Partial Dismissal of Pl.'s Compl., Ex. A at 5–6). Section V provides, "[n]o person presently employed . . . shall be discharged or otherwise disciplined by the Hospital except for justifiable or reasonable cause. Any dispute arising out of discharge or other disciplinary action shall be adjusted and determined in the manner hereinafter provided in this agreement from the determination of any dispute of grievance." *Id.* at 5. Article VI controls the procedures by which disputes and grievances under the CBA are to be addressed, providing for specific mechanisms of discussion, meeting, and arbitration. *See id.* at 5–6.

only grants jurisdiction to otherwise valid claims, and does not entitle a plaintiff to bring time barred state law claims in federal court." *Stordeur,* 995 F.Supp. at 102.

Plaintiff's common law claim requires by the very language of the complaint, that the court interpret the CBA. (Complaint ¶ 46.) Because it is undisputed that the CBA controls determination of just cause and proper administration of grievance procedures, the court will ultimately have to assess Sections V and VI to determine whether Jamaica Hospital had "justifiable and reasonable cause" to terminate Plaintiff's employment, and whether Jamaica Hospital held an adequate hearing or investigation. Assessing the CBA triggers § 301 and causes the federal statute to preempt the state common law claim.

 Plaintiff contends, however, that because the terms of the CBA are unambiguous and would not produce differing opinions, § 301 does not preempt the common law claim in this instance. However, where a CBA is inextricably intertwined with a claim before the court, § 301 presents an a priori bar, not an ad hoc guideline: in such instances, § 301 will preempt state law whenever interpretation of the CBA is required; § 301 does not allow an exception for situations appearing to present relatively uncontroversial interpretations. *See Allis–Chalmers Corp. v. Lueck,* 471 U.S. 202, 208–13, 105 S.Ct. 1904, 85 L.Ed.2d 206 (1985) (holding that § 301 preempts state claims substantially involving application of a labor contract between an employer and a union representing employees). Accordingly, because the court must interpret the terms of Articles V and VI of the CBA to determine whether Plaintiff was wrongfully terminated, Plaintiff's common law wrongful termination claim is preempted.

 Furthermore, even if this court were to read the Plaintiff's wrongful termination claim as brought pursuant to § 301, the claim would be time-barred because § 301 claims are subject to a six-month statute of limitations. *See DelCostello v. Int'l Brotherhood of Teamsters,* 462 U.S. 151, 165, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983) (applying a six-month statute of limitations to § 301 claims). Duran brought this action on October 9, 2001, more than six-months after the date of Duran's alleged wrongful employment termination.[5] (Complaint ¶ 44.)

Accordingly, I find there is no genuine issue before the court as to any material fact. Thus, Defendant's motion, which has been converted by the court to a Rule 56 motion for summary judgment, is GRANTED against Plaintiff's claim for wrongful termination.

### III. Conclusion

For the foregoing reasons, the Moving Defendants' motion to dismiss Plaintiff's complaint as to her negligence and slander claims is GRANTED, and Defendant's motion against Plaintiff's wrongful termination claim, which the court converts to a motion for summary judgment is also GRANTED.

SO ORDERED.

---

5. Moreover, Plaintiff has also failed to include the following necessary elements of a valid § 301 claim to wit: 1) an employee is required to attempt to exhaust any grievance or arbitration remedies provided in the CBA; and 2) an employee must allege that the union breached its duty of fair representation. *See*

*DelCostello v. Int'l Brotherhood of Teamsters,* 462 U.S. 151, 163–165, 103 S.Ct. 2281, 76 L.Ed.2d 476 (requiring exhaustion of grievance and allegations of union breach prior to bring a federal action). There is no indication on the record that Plaintiff has satisfied either element.